### NAVAL STORES HOLDING CO., Inc., v. FONTENOT, Collector of Internal Revenue.

### SAME v. UNITED STATES.

Nos. 334, 449.

District Court, E. D. Louisiana, New Orleans Division.

Jan. 5, 1943.

328

Monroe & Lemann and Nicholas Callan, all of New Orleans, La., for plaintiff.

Herbert W. Christenberry, U. S. Atty., and Henry C. Vosbein, Asst. U. S. Atty., both of New Orleans, La., and J. Leonard Lyons, Sp. Asst. to the Atty. Gen., for defendants.

BORAH, District Judge.

These consolidated actions were submitted to the court without the intervention of a jury on an agreed statement of facts. The sole question presented by the record is whether the plaintiff was "carrying on or doing business" during the years ending June 30, 1938, and June 30, 1939, when it paid capital stock taxes under protest. The material facts are these:

### Findings of Fact.

1. Plaintiff, a Louisiana corporation, filed capital stock tax returns for the years ending June 30, 1938, and June 30, 1939, claiming exemption from the tax on the grounds that it was not carrying on or doing business so as to be subject to tax under the capital stock tax statutes. These claims of exemption were rejected by the Commissioner .of Internal Revenue. Plaintiff paid the taxes and interest computed thereon in the amounts of $1,117.31 and $1,041.-62 for the years ending June 30, 1938, and June 30, 1939, respectively, claims for refund for these amounts were refused and these suits were brought to recover the amounts paid.

2. Plaintiff was organized on July 21, 1933, for the purpose of holding all the capital stock of the Downing Company, Inc., a Delaware corporation, and pledging same as security for an issue of 6½% debentures which were distributed to holders of Gillican Co., Inc. 6½% debentures in connection with a reorganization of securities of Gillican Co., Inc.

3. The circumstances under which plaintiff was organized were substantially as follows:

The Gillican Chipley, Inc., owned a number of subsidiary companies, including the Downing Company, Inc., which were engaged in the naval stores business. An indenture of Gillican Chipley, Inc., prohibited it from encumbering its assets and a plan was devised to have its subsidiary, Gillican Company, Inc., float an issue of debentures and with the proceeds acquire stock of the Downing Company, Inc., and in turn pledge this stock to secure the debenture issue. The plan was carried out.

4. The Gillican Company defaulted on its dividend payments to the preferred stockholders due July 1, 1930, December, 1930, and July, 1931. It was also unable to pay the interest due on its debentures on July 31, 1931, whereupon the trustee for the debentures declared the bonds to be in default and a debenture holders' protective committee was elected. In a public sale under the pledge the protective committee .acquired all of the stock of the Downing Company, Inc., amounting to 24,133 shares and in addition a deficiency claim against Gillican Company, Inc., appraised as worth $81,000, and in pursuance of a plan of reorganization caused plaintiff to be formed. The protective committee then conveyed to plaintiff the Downing Company, Inc., stock and the deficiency claim for which it received the following securities issued by plaintiff:

> 8,549 shares of $6 non-cumulative preferred stock for a par value of $10
>
> 22,460 shares of common stock of a par value of $1.00
>
> $1,940,434.68 face value of 10 year 6½% cumulative income debentures issued in accordance with the terms of an indenture dated November 1, 1932.

Simultaneously with the issue of these debentures plaintiff pledged the stock of the Downing Company as security therefor in accordance with the terms of the indenture. Whitney National Bank of New Orleans was named trustee.

5. Under the plan adopted to retire the debentures the trustee was required to solicit tenders from plaintiff's debenture holders. In other words the debenture holders were requested to offer a bid price which they were willing to accept for their deben-

tures, and these tenders or bids the trustee agreed to accept beginning with the lowest bid to the extent of available funds on hand. The plan was in accordance with the indenture provisions.

6. Under date of August 22nd, 1935, in compliance with the written request of plaintiff, Whitney National Bank as trustee surrendered to the Downing Company, Inc., 21,633 shares of the Downing Company, Inc., stock out of a total issue of 24,133 shares, which had been held by Whitney National Bank as trustee in pledge, in exchange for the note of the Downing Company, Inc., dated April 15th, 1935, for the principal sum of $1,800,000, bearing interest at the rate of 8% per annum until paid. Except for the acts hereinafter set forth, the sole activity of plaintiff during the taxable years in question has consisted of the receipt of payments on this note and the distribution of the proceeds thereof to the debenture holders on their tenders.

7. From time to time by letter plaintiff advised its debenture holders of its operations and financial condition as well as the operations and financial condition of the Downing Company, Inc.

8. In 1937 plaintiff realized a taxable profit of $88,507.73, and in 1939 a taxable profit of $42,778.66. The 1939 profit consisted of the following items:

| | |
|---|---|
| Profit on deficiency claim against Gillican Co. Inc...... | $ 6,260.47 |
| Profit on sale of $50,000.00 H.O.L.C. 2¼ Bonds.............. | 218.75 |
| Profit on Debentures Naval Stores Holding Co. Inc., 6½% purchased (Principal)....... | 14,868.77 |
| Profit on Naval Stores Holding Co. Inc., 6½% Debentures purchased (Interest) ........ | 11,232.01 |
| Profit on $26,000.00 Naval Stores Holding Co. Inc., Debentures cancelled (Principal) | 4,847.00 |
| Profit on $26,000.00 Naval Stores Holding Co. Inc., 6½% Debentures cancelled (Interest) .............-.......... | 5,351.66 |
| | $42,778.66 |

9. Plaintiff agreed to accept the HOLC bonds from the liquidators of Gillican Company, Inc., to apply on its deficiency claim in lieu of cash. The transaction took the form of a sale. Naval Stores Holding Company, Inc., paid the liquidators the market price of the bonds, and then with this cash the liquidators of Gillican Company, Inc., made a pro rata distribution to the deficiency claimants including plaintiff, the entire transaction being consummated within a few days time. The HOLC bonds were then subsequently disposed of by plaintiff at a profit of $218.75.

10. The liquidator of Gillican Company, Inc., held $26,000 of plaintiff's debentures and the liquidator offered these debentures to Naval Stores Holding Co., Inc., at the prevailing market price in order to further carry out the liquidation of its assets. Plaintiff agreed to accept the debentures at the market price which was less than par, and the liquidator received a corresponding credit on the amount due Naval Stores Holding Company, Inc. These debentures were subsequently cancelled.

11. Except for the item of $218.75 which was the amount of profit realized on the sale of the HOLC bonds, the other items were book or paper profits, with which Naval Stores Holding Company, Inc., charged itself when it acquired its own debentures at less than par and accrued interest, principally on tenders by the debenture holders.

12. Whitney Bank received $200 per month compensation to reimburse it for clerical and other expenses incident to looking after the affairs of Naval Stores Holding Co., Inc. The work consisted largely of writing form letters to debenture holders, talking to debenture holders, who visited Whitney in great numbers to discuss the affairs of the company, keeping records and files and things of that nature.

13. None of the officers of plaintiff has ever received remuneration for his services.

14. Plaintiff has never maintained any office, and has never paid rent. Its Board met in one of the banking rooms of Whitney Bank in New Orleans.

15. The Downing Company, Inc., had its principal office in Brunswick, Georgia. The officers of the Downing Company, Inc., are located in Brunswick, Georgia. None of the directors or officers of plaintiff is director or officer of the Downing Company, Inc.

### Conclusions of Law.

1. The evidence establishes that during the taxable periods ending June 30th, 1938, and June 30th, 1939, plaintiff corporation was not engaged in any activity for profit,

and that it was not carrying on or doing business within the provisions of the Capital Stock Tax Act.

2. Plaintiff is entitled to recover the taxes paid for the two years ending June 30, 1938, and June 30, 1939, with interest as prayed for, less minor adjustments set forth in paragraph 19 of the stipulation, and the Clerk is instructed to enter judgments accordingly.